UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUN DARNELL GARLAND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>C. FLORES,<br><br>　　　　　Defendant. | Case No. 2:20-cv-01061-DAD-JDP (PC)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Shaun Garland alleges that defendant Flores engaged in retaliation by shortening and recording plaintiff's visit with his mother at California Health Care Facility. Defendant moves for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies. I recommend granting defendant's motion.

**Background**

According to plaintiff's third amended complaint, his mother visited him at California Health Care Facility ("CHCF") on June 3, 2018. ECF No. 16 at 10. Plaintiff alleges that Flores, an officer at California State Prison-Los Angeles ("CSP-LA"), ordered officers at CHCF to shorten and record that visit in retaliation for a lawsuit plaintiff filed against the California Peace Officer Association in 2011. *Id.*

1

Plaintiff filed numerous grievances about that visit, all of which were canceled except grievance log number CHCF-E-02336 ("2336-July 19").[1] ECF No. 40-3 at 13. While the trajectory of that grievance was complicated, both parties agree that 2336 was exhausted. A brief history of that grievance follows.

On June 4, 2018, the day after his mother's visit, plaintiff filed grievance log number CHCF-HC-18002531 ("2531"). *Id.* at 27. He wrote in that grievance that he was "not satisfied with imbedding his surveillance/continuance operation among and through the staff, clinicians, and [correctional officer] assigned to B5B unit at CHCF, Juan Doe EOP Ad-Seg property officer at California State Prison-Los Angeles County (CSP-LAC), imposed this surveillance regime in the CHCF visiting room during the 2nd watch on June 2, 2018." *Id.* On June 15, 2018, the grievance was rejected because it contained issues outside of the health care jurisdiction. *Id.* at 29. Plaintiff filed a new grievance, which is identified as CHCF-E-18-02336, on June 18, 2019 ("2336-June 18"). *Id.* at 47-48. The 2336-June 18 grievance addressed substantially similar issues to those addressed in the 2531 grievance and made reference to both the Ad-Seg property officer at CSP-LA and the surveillance of the visit on June 2. *Id.* The Appeals Coordinator of CHCF canceled the 2336-June 18 grievance on June 25, in part, because the visit had occurred on June 3—not June 2, and prison records indicate that visit was only shortened by one minute. *Id.* at 42.

Plaintiff then filed a third grievance on July 19, which was assigned the same log number as his second grievance, CHCF-E-18-02336 ("2336-July 19"). *Id.* at 14-17. That grievance contains similar factual allegations as the previous two grievances, but unlike the previous grievances, it did not identify a CSP-LA officer. *Id.* Plaintiff wrote in the 2336-July 19 grievance that on June 3, 2018, he was scheduled to have a two-hour visit with his mother, from noon to 2:00 p.m. *Id.* Plaintiff wrote in the grievance that the visitation room was changed so that his visit could be audibly and visually recorded. Additionally, he claimed that he was not allotted his full two hours of visitation time. *Id.*

---

[1] Plaintiff submitted two grievances with the log number CHCF-E-18-02336: one on June 18 and one on July 19. The July 19 grievance was exhausted.

The 2336-July 19 grievance was rejected several times. *Id.* at 43, 44, 45, 46. Eventually, the Office of Appeals reversed the previous rejections, and the July 19-2336 grievance was granted in part at the first level of review. *Id.* at 30-31; 20-23. The first level of review stated that CHCF was not aware of any audio surveillance devices in his visiting room on June 3, 2018, and that the Strategic Offender Management Systems logged his visit as lasting one hour and fifty-nine minutes. *Id.* Plaintiff appealed to the second level of review, and the appeal was granted in part. *Id.* at 18-19. The appeal was exhausted after the third level of review found insufficient evidence to warrant modification of the first level determination. *Id.* at 13.

## Legal Standard

### A.   Summary Judgment

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computs., Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Rule 56 allows a court to grant summary adjudication, also known as partial summary judgment, when there is no genuine issue of material fact as to a claim or a portion of that claim. *See* Fed. R. Civ. P. 56(a); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks and citation omitted). The same standards apply to both a motion for summary judgment and a motion for summary adjudication. *See* Fed. R. Civ. P. 56(a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing either that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support

3

its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

4

**B.     PLRA Exhaustion**

Under the Prison Litigation Reform Act ("PLRA") of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

To satisfy the PLRA's exhaustion requirement, a plaintiff's administrative appeals must "provide enough information . . . to allow [jail] officials to take appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004)); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress.").

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. The Supreme Court has explained when an administrative procedure is unavailable:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

*Id.* at 643-44 (citations omitted); *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is

1  deemed to have exhausted available administrative remedies."). If the court concludes that

2  plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without

3  prejudice of the portions of the complaint barred by section 1997e(a). *See Jones v. Bock*, 549

4  U.S. 199, 223-24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**Analysis**

Defendant argues that the 2336-July 19 grievance failed to exhaust plaintiff's retaliation claim because it neither identified Flores nor stated that any actions taken against him were carried out in retaliation. ECF No. 40 at 10. Plaintiff contends that the grievance raised all pertinent issues, and that the new CDCR regulations do not require that his grievance identify Flores specifically.[2] ECF No. 50 at 3-4.

Grievance 2336-July 19 fails to exhaust plaintiff's First Amendment retaliation claim because it does not suggest that his visit with his mother was cut short because he engaged in protected conduct.[3] *See Gilbert v. Fernald*, No. CV 20-1269-SVW (KS), 2022 WL 18776165, at *8 (C.D. Cal. Dec. 29, 2022) (holding that the plaintiff's grievance did not exhaust his retaliation claim because the grievance only notified the prison that the defendant engaged in sexual misconduct, not that the defendant engaged in such conduct in retaliation for the plaintiff asserting his First Amendment right). "It is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances . . . [, and r]etaliation against

---

[2] The 2020 amendments to the CDCR regulations do not apply retroactively; they only apply to inmate grievances filed "on or after June 1, 2020." Cal. Code Regs. tit. 15 § 3480(a) (2021). *See Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir. 2021) (applying 2015 version of CDCR's grievance process to claims subject to the 2015 version in decision issued in November 2021); *Wimberly v. Alician*, 2022 WL 1769613, at *1 (9th Cir. June 1, 2022) (applying 2019 version of CDCR's grievance process to claims subject to the 2019 version in decision issued in June 2022).

[3] I am not convinced by defendant's argument that plaintiff's grievance did not sufficiently identify Flores. Plaintiff filed at least two grievances about his June 3 visit and both grievances identified a property officer at CSP-LA. *See* ECF No. 40-3 at 27, 47. "The grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). Nevertheless, the exhausted grievance does not reference any retaliatory conduct or intent, rendering it unable to exhaust plaintiff's retaliation claim.

6

prisoners for their exercise of this right is itself a constitutional violation." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted).  A claim of retaliation under the First Amendment has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

       Plaintiff's grievance makes no mention of plaintiff's prior lawsuit against the California Peace Officer Association or otherwise indicate that Flores' actions were done because plaintiff engaged in constitutionally protected conduct (the lawsuit) or any other constitutionally protected conduct.  Likewise, plaintiff did not include any facts suggesting an ill or questionable motive on Flores' part.  And although inmates are not required to set forth legal terminology in their grievances, they must state facts that put prison officials on notice of the alleged misconduct.  *See McClintock v. Colosimo*, No. 2:13-cv-0264 TLN-DAD (P), 2015 WL 1013689, at *4 (E.D. Cal. Mar. 5, 2015) (finding that the plaintiff's "vague request" in his grievance for defendants to "'cease all intimidations and harassment forthwith'" was not "enough to satisfy the exhaustion requirement for the retaliation claims he now asserts against defendants"); *Simpson v. Feltsen*, No. 2:09-cv-00302 MSB, 2010 WL 5288181 at *5 (E.D. Cal. Dec. 17, 2010) (noting that if the court were to assume that the plaintiff's grievance had been improperly screened out and had been exhausted, it still would not have exhausted the plaintiff's retaliation claim because the grievance made no mention of the plaintiff's exercise of his First Amendment rights that allegedly precipitated his retaliatory transfer); *Martinez v. Adams*, No. 1:09-cv-00899-LJO-DLB, 2010 WL 3912359 at *5 (E.D. Cal. Oct. 5, 2010) (finding that the plaintiff had failed to exhaust several retaliation claims because his grievances did not "mention retaliation or set forth facts that would alert a prison official to retaliatory conduct for protected conduct").

       Accordingly, it is hereby RECOMMENDED that:

       1.  Defendant's motion for summary judgment, ECF No. 40, be granted.

  2. Plaintiff's claims be dismissed without prejudice for failure to exhaust administrative remedies.

  3. The Clerk of Court be directed to close the case.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: May 12, 2023

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE